**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Louise Marquez, | No. CV-16-03351-PHX-JAT |
|      Plaintiff, | **ORDER** |
| v. | |
| Glendale Union High School District, | |
|     Defendant. | |

     Pending before the Court are Defendant's Motion for Summary Judgment (Doc. 67) and Plaintiff's Motion for Partial Summary Judgment (Doc. 70). The Court now rules on these motions.

## I.    INTRODUCTION

     Defendant Glendale Union High School District (hereinafter "Defendant" or the "District") employed Plaintiff Louise Marquez (hereinafter "Plaintiff") as a computer programmer from October 2001 until Plaintiff's employment terminated on October 1, 2014. (Doc. 68 ¶¶ 1, 63; Doc. 69 ¶¶ 1-2). Plaintiff claims that her termination was illegally motivated by her age, disability, and statutorily protected activity. (Doc. 3 ¶¶ 1-2). Particularly, Plaintiff alleges that Defendant violated the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq.* ("ADA"), the Rehabilitation Act, 29 U.S.C. § 793, *et seq.* ("Rehabilitation Act"), and the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*

("FMLA"). (Doc. 3 ¶¶ 1-2).[1] Defendant denies each of Plaintiff's claims, and raises the affirmative defense that Plaintiff failed to mitigate her damages. (Doc. 10 at 1-7).

On May 18, 2018, Defendant filed its pending Motion for Summary Judgment (Doc. 67), contending that Plaintiff failed to support each of her remaining claims and that no genuine dispute of material fact exists such that Defendant is entitled to judgment as a matter of law. (Doc. 67 at 1). Plaintiff filed an Amended Response to Defendant's Motion for Summary Judgment (Doc. 83) on July 16, 2018,[2] to which Defendant filed a Reply (Doc. 84) on July 27, 2018.[3]

Also on May 18, 2018, Plaintiff filed her pending Motion for Partial Summary Judgment (Doc. 70) on her Eighth Cause of Action, which alleges interference with Plaintiff's rights under the FMLA, and on Defendant's affirmative defense of failure to mitigate damages. (Doc. 70 at 1). Defendant filed its Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. 80-1) on July 6, 2018,[4] to which Plaintiff filed a Reply (Doc. 85) on July 27, 2018.[5]

---

[1] In her Amended Complaint, Plaintiff also alleged discrimination based on race, national origin, and/or ancestry under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and under 42 U.S.C. § 1981 in Counts One and Two, respectively. (Doc. 3 ¶¶ 23-32). However, the Court dismissed these two Counts pursuant to the stipulation of the parties. (Doc. 52).

[2] Plaintiff filed her original Response to Defendant's Motion for Summary Judgment (Doc. 76) on June 30, 2018, which the Court deemed to be timely in its Order dated July 3, 2018. (Doc. 79). Plaintiff was thereafter granted additional time to file an amended response pursuant to the Court's Order on July 13, 2018. (Doc. 82).

[3] Defendant's Reply (Doc. 84) was timely, as the Court extended the deadline for the parties to file replies to their summary judgment motions to July 27, 2018 in its Order dated July 13, 2018. (Doc. 82).

[4] When Defendant attempted to timely file its Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. 74) on June 29, 2018 in accordance with the Court's Order extending the deadline for responses to summary judgment motions (Doc. 72), Defendant inadvertently filed its Controverting Statement of Facts a second time. (Doc. 80). Thereafter, Defendant filed the correct Response in Opposition to Plaintiff's Motion for Partial Summary Judgment concurrently with its Notice of Errata on July 6, 2018. (Doc. 80).

[5] Plaintiff's Reply (Doc. 85) was timely, as the Court extended the deadline for the parties to file replies to their summary judgment motions to July 27, 2018 in its Order dated July 13, 2018. (Doc. 82).

## II.    BACKGROUND

The following facts providing relevant background are drawn from the parties' statements of fact, briefs, and from parts of the record.

Plaintiff was an at-will employee for the District. (Doc. 77-1 at 149, 152). As a computer programmer, Plaintiff was responsible for writing, maintaining, and developing computer code relating to District student data, which she primarily accomplished throughout her tenure at the District by using a Linux-based programming language. (Doc. 68 ¶¶ 3-4; Doc. 77 ¶¶ 3-4). In 2007, the District purchased new student information and data management software, which used a different programming language known as Structured Query Language ("SQL"). (Doc 68 ¶¶ 5-6; Doc. 77 ¶¶ 5-6). That year, Plaintiff attended training on SQL Transact with all of the other programmers, (Doc. 77-1 at 26, Marquez Depo., 98: 10-24; Doc. 77-1 at 71, Beveridge Depo., 33: 16-22). In 2010, Ashley Hyman, another computer programmer, attended SQL Reporting training, which Plaintiff claims she was not provided the opportunity to attend. (Doc. 77 ¶ 93). Although Plaintiff requested external SQL Reporting training, she never received such training prior to her termination. (Doc. 77 ¶ 94; Doc. 77-1 at 135, ¶¶ 18-19). Nevertheless, Plaintiff had other training resources available to her, (Doc. 77-1 at 27, Marquez Depo, 101:5- 103:18), and frequently received instruction on SQL from Denis Alcock, another programmer, (Doc. 68 ¶ 25).

Over several years, the District gradually transitioned from the Linux-based software to the new SQL software. (Doc. 68 ¶ 7; Doc. 77 ¶ 7). By the beginning of the 2014–2015 school year, the transition from the Linux software to the SQL software was nearly complete. (Doc. 68 ¶ 26; Doc. 77-1 at 41, Dean Depo., 29: 1-21). However, Plaintiff asserts that there was still significant work that required use and knowledge of Linux at the beginning of the 2014–2015 school year. (Doc. 77 ¶ 13).

From 2005 until August 2014, Jordan Beveridge served as the Director of the IT department at the District. (Doc. 69 ¶ 3). Gail King was Plaintiff's immediate supervisor from 2007 until September 1, 2012. (Doc. 77 ¶¶ 83-84). Thereafter, Mr. Beveridge served

as Plaintiff's supervisor until approximately July 2014, at which time Ms. Hyman was promoted and became Plaintiff's immediate supervisor. (Doc. 69 ¶ 5; Doc. 75 ¶ 5; Doc. 69-1 at 41, Hyman Depo., 9:1-10). Although Plaintiff did not have any difficulties with Ms. Hyman when they were both programmers, Plaintiff asserts that problems arose with Ms. Hyman once she became Plaintiff's supervisor. (Doc. 77-1 at 23, Marquez Depo., 82:11-16). For example, Plaintiff claims that Ms. Hyman told Plaintiff: "I would rather have 100 young ones than one of you," (Doc. 83 at 13), although Defendant contends Ms. Hyman did not make this comment, (Doc. 67 at 15).

On approximately September 1, 2014, Josh Dean replaced Mr. Beveridge as Director of the IT Department. (Doc. 69 ¶ 7). In anticipation of this transition, Mr. Beveridge and Mr. Dean began discussing the restructuring of the IT department in early August. (Doc. 68 ¶ 28; Doc. 77 ¶ 28). In accordance with the restructuring, the District approved new programmer job descriptions emphasizing the need for training and experience in SQL Reporting on September 7, 2014, and October 1, 2014. (Doc. 77-1 at 97-100).

With the exception of one performance evaluation from 2010 expressing that Plaintiff did not meet job performance standards in five of the seven evaluated categories, there is little evidence in the record discussing Plaintiff's performance prior to April 2014. *See* (Doc. 77-1 at 144-46). Plaintiff's April 30, 2014 performance evaluation was an improvement, as she received satisfactory ratings in five of the seven categories. (Doc. 77-1 at 140-42). Thereafter, however, Plaintiff encountered frequent scrutiny from her supervisor, Ms. Hyman, for allegedly: failing to meet deadlines, (Doc. 68 ¶ 21); resisting learning and using SQL, (Doc. 68 ¶¶ 14, 39); failing to actively communicate when she ran into project delays or needed help, (Doc. 68 ¶ 35); and for making mistakes including incorrectly uploading certain information on September 3, 2014 (Doc. 68 ¶ 36). Ms. Hyman met with Plaintiff to discuss these alleged performance issues on September 8, 2014.

On September 9, 2014, Plaintiff improperly coded new student attendance

information, (Doc. 68 ¶ 40), although Plaintiff claims the error was a result of Ms. Hyman sending her the wrong instructions, (Doc. 77 ¶ 99). On September 12, 2014, Plaintiff met with Ms. Hyman and Human Resources Director Tom Hernandez to again discuss Plaintiff's alleged performance issues, including the requirement that Plaintiff use SQL, complete projects on time, and communicate with her coworkers regarding problems. (Doc. 68 ¶ 41; Doc. 77 ¶ 41). Following this meeting, Defendant issued a written reprimand to Plaintiff summarizing her performance issues on September 15, 2014. (Doc. 68 ¶ 43; Doc. 77 ¶ 43). Also on September 15, 2014, Mr. Hernandez provided Plaintiff with information on three open job positions within the District to which Plaintiff could transfer. (Doc. 68 ¶ 45; Doc. 77 ¶ 45). That same day, Plaintiff completed three transfer request forms for these open positions, writing "I do not have enough SQL Query and Report Builder experience to meet deadlines" as the reason for transfer, although Plaintiff claims she wrote this statement "under duress and at Mr. Hernandez's direction." (Doc. 68 ¶ 46; Doc. 77 ¶¶ 45-46).

On September 16, 2014, Plaintiff was not feeling well and sought emergency medical care. (Doc. 69 ¶ 8). Subsequently, Plaintiff emailed Ms. Hyman requesting sick leave for that day. (Doc. 68 ¶ 49; Doc. 68-2 at 77, Hyman Depo., 43:4-22; Doc. 77 ¶¶ 49-50). Plaintiff claims that she told Ms. Hyman that she had a brain tumor when she contacted Ms. Hyman on September 16, (Doc. 68-2 at 10-11, Marquez Depo., 110:22-111:15), but Ms. Hyman asserts that she had no idea that Plaintiff had a brain tumor until after Plaintiff no longer worked at the District, (Doc. 68-2 at 77-78, Hyman Depo., 43:23-44:9). Nevertheless, the parties agree that Plaintiff never shared any information regarding a treatment plan or the work related impact of any diagnosis with Ms. Hyman. (Doc. 68 ¶ 51; Doc. 77 ¶ 51).

From September 16 through September 29, Plaintiff did not report to work and instead phoned or emailed in daily requests to use sick leave. (Doc. 68 ¶ 57; Doc. 77 ¶ 57). In total, Plaintiff used 11 days of sick leave in this period. (Doc. 69 ¶ 20). Plaintiff did not tell any other District employees—including Mr. Beveridge, Mr. Hernandez or

Mr. Dean—that she was seeing a doctor for a possible brain tumor. (Doc. 77 ¶ 52; Doc. 68-2 at 10, Marquez Depo., 110:2-21).

On September 24, 2014, Ms. Hyman emailed Plaintiff requesting medical documentation for that day's absence and for any further absences in light of Plaintiff's use of her ten discretionary days for the year. (Doc. 69 ¶ 14; Doc. 69-3 at 10; Doc. 75 ¶ 14). Plaintiff then emailed Mr. Hernandez on September 25, 2014, asking what form of medical records she should provide in response to Ms. Hyman's request for documentation. (Doc. 69 ¶ 15; Doc. 69-3 at 10; Doc. 75 ¶ 15). The next day, Mr. Hernandez spoke to Plaintiff regarding the medical documentation needed. (Doc. 69 ¶ 16). On September 29, 2014, Plaintiff notified Defendant that she scheduled a doctor's appointment for October 6, 2014 specifically for the purpose of obtaining the medical documentation Defendant had requested, and also stated that when she visited the doctor on September 22 she had been unaware that she needed to obtain medical documentation to submit to the District. (Doc. 69 ¶ 17; Doc. 69-3 at 12; Doc. 75 ¶ 17). Nevertheless, at no time from September 16 until October 1 did Plaintiff provide Defendant with any medical documentation or doctor's notes explaining the nature of the condition that necessitated her time off of work. (Doc. 68 ¶ 58; Doc. 77 ¶ 58).

On September 30, 2014, Mr. Hernandez called Plaintiff to inform her that her position had been dissolved due to the restructuring of the IT department. (Doc. 68 ¶ 61; Doc. 77 ¶ 61). Following up on October 1, 2014, Mr. Hernandez sent Plaintiff an email notifying her that despite the elimination of her position due to the restructuring, she was eligible to reapply for any district position for which she might be qualified. (Doc. 69 ¶ 19; Doc. 69-1 at 30; Doc. 75 ¶ 19). Plaintiff's employment with the District ended effective October 1, 2014. (Doc. 68 ¶ 63; Doc. 77 ¶ 63). At the time of her termination, Plaintiff had 92 days of accrued sick leave, 25 days of accrued vacation leave, and was almost 60 years old. (Doc. 69 ¶ 21; Doc. 75 ¶ 21; Doc. 77-1 at 124).

In December 2014, Plaintiff filed a Charge of Discrimination with the EEOC. (Doc. 77-1 at 124). Thereafter, Plaintiff filed the instant action on September 30, 2016.

(Doc. 1). In discovery, Defendant sought and received information concerning Plaintiff's efforts to mitigate damages, which Defendant's vocational expert used to prepare an Earning Capacity Evaluation detailing Plaintiff's efforts in finding employment as well as potential job opportunities available to her in the Phoenix area. (Doc. 69 ¶¶ 29-30; Doc. 75 ¶¶ 47-50).

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1)(A-B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and the elements of the cause of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* A material fact is any factual issue that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a

reasonable jury could return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id*. at 247-48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

At the summary judgment stage, the Court's role is to determine whether there is a genuine issue available for trial. There is no issue for trial unless there is sufficient evidence in favor of the non-moving party for a jury to return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 249-50. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. (citations omitted).

## IV. DISCUSSION

### A. Age Discrimination under the ADEA

Defendant has moved for summary judgment on Plaintiff's Third Cause of Action, which alleges age discrimination under the ADEA. Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The statute's protections are "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a). In order for an employer to be liable for age discrimination under the ADEA, "the plaintiff's age must have 'actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). *See also Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 176 (2009) ("To establish a disparate-treatment claim under the plain language of the ADEA, . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."). Nevertheless, the plaintiff does *not* have the burden of proving that

age was the "but-for" cause of the employer's adverse decision in order to survive summary judgment; rather, the plaintiff bears the burden of showing "but-for" causation at trial. *Shelley v. Geren*, 666 F.3d 599, 607-08 (9th Cir. 2012).

Courts analyze ADEA claims differently depending on whether the claim relies on direct or circumstantial evidence. *See Enlow v. Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 812 (9th Cir. 2004). "Direct evidence, in the context of an ADEA claim, is defined as 'evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the *fact finder* to infer that that attitude was more likely than not a motivating factor in the employer's decision.'" *Id.* (quoting *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (8th Cir. 1999)). Accordingly, if the plaintiff's ADEA discrimination claim relies on direct evidence, the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), does not apply. *Id.; see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 112 (1985) ("The *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."). In contrast, claims of age discrimination based on circumstantial evidence are analyzed under the *McDonnell Douglas* three stage burden-shifting framework. *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012) (citing *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008)).

Here, Plaintiff has only produced circumstantial evidence of age discrimination in the form of comparator evidence and an alleged stray comment. Specifically, Plaintiff points to the fact that Defendant fired the only other Computer Programmer over age 40 just two months after Plaintiff's termination as evidence of unlawful age discrimination against an individual in the same protected class as Plaintiff. (Doc. 83 at 12-13). As evidence indicating that Defendant may have been hostile toward employees over age 40, a "well-defined and protected group," such an incident could demonstrate that Defendant had a discriminatory animus toward older employees. *Beachy v. Boise Cascade Corp.*, 191 F.3d 1010, 1014 (9th Cir. 1999); *see also Heynes v. Caruso,* 69 F.3d 1475, 1479 (9th

Cir. 1995) (holding that the district court erred in excluding testimony about employer's harassment of other female employees, as such evidence was relevant to proving a discriminatory motive for termination because "an employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason behind firing an employee who is a member of that group.").

Plaintiff also alleges that Ashley Hyman, her supervisor at the time of the termination of her employment, made an ageist comment during a meeting with Plaintiff in August 2014 after Plaintiff asked Ms. Hyman for four days of bereavement leave. (Doc. 83 at 13; Doc. 77 ¶ 96). In response to this request, Plaintiff claims that Ms. Hyman stated: "I would rather have 100 young ones than one of you." (Doc. 83 at 13). According to Defendant, Ms. Hyman denies making this comment, or any other ageist remarks, to Plaintiff. (Doc. 67 at 15). In her Amended Response to Defendant's Motion for Summary Judgment, Plaintiff acknowledges that Ms. Hyman's alleged statement is a "stray comment" which, when standing alone, may not be sufficient to prove discrimination. (Doc. 83 at 12-13). Generally, "stray remarks not directly tied to the decision-making process are not direct evidence capable of defeating summary judgment." *France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015) (citing *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990) ("[S]tray remarks are insufficient to establish discrimination.")).

In this case, Plaintiff has not proffered any evidence that Ms. Hyman's remark about her age was directly tied to Plaintiff's termination. Even drawing all inferences in Plaintiff's favor,[6] Plaintiff has, at most, surmised that Mr. Hernandez's decision to terminate Plaintiff was impacted by Ms. Hyman's alleged discriminatory animus. (Doc. 83 at 13). To support this theory, Plaintiff points to the fact that Ms. Hyman was only 26

---

[6] *See Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1129 (9th Cir. 2000) ("It is not the province of a court to spin . . . evidence in an employer's favor when evaluating its motion for summary judgment. To the contrary, all inferences must be drawn in favor of the non-moving party.").

years old at the time of Plaintiff's termination, (Doc. 83 at 13; Doc. 77 ¶ 16), and claims that "[w]hile Ms. Hyman was not an ultimate decision-maker" in ending Plaintiff's employment, "she was certainly in a position that would have required her input and involvement as to how the restructuring would be implemented," (Doc. 77 ¶ 125). Regardless, Plaintiff failed to proffer any evidence that Ms. Hyman recommended Plaintiff's termination based on Plaintiff's age or that this "stray comment" was related to any decision-making process. Moreover, the comment is vague and not necessarily probative of discriminatory intent, as it is not clear whether Ms. Hyman would prefer "100 young ones" because she dislikes Plaintiff for being "old," or merely because she would prefer having more workers than less. Thus, the Court concludes that the comparator evidence produced by Plaintiff and Ms. Hyman's alleged stray comment are circumstantial evidence of age discrimination requiring application of the three-stage, burden-shifting framework of *McDonnell Douglas*. (Doc. 83 at 12). *See France*, 795 F.3d at 1173; *Sheppard*, 694 F.3d at 1049 (citing *Diaz*, 521 F.3d at 1207); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918-19 (9th Cir. 1996).

### 1. The Prima Facie Case

To make out an ADEA claim based on circumstantial evidence of discrimination, the plaintiff must first establish a *prima facie* case by demonstrating she was "(1) at least forty years old, (2) performing [her] job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination." *Diaz*, 521 F.3d at 1207. The requisite degree of proof necessary to establish a prima facie case is minimal on summary judgment, and does not need to meet a preponderance of the evidence standard. *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094 (9th Cir. 2005).

Should the plaintiff succeed in showing a prima facie case, the burden then shifts "to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action." *Diaz*, 521 F.3d at 1207 (citing *Coleman v. Quaker Oats Co.*, 232

F.3d 1271, 1281 (9th Cir. 2000)); *see also Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007). Then, if the employer satisfies its burden, the plaintiff "must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination." *Id.* (citing *Coleman*, 232 F.3d at 1281).

The parties do not dispute that Plaintiff is at least forty years old and a member of the class protected under the ADEA. Accordingly, the first element of Plaintiff's *prima facie* case is met. The third element of Plaintiff's *prima facie* case is also met, as neither party denies that Plaintiff's employment with the District terminated. Rather, the contention lays in the second and fourth elements as Defendant claims that Plaintiff cannot establish a prima facie case of age discrimination because Plaintiff was not performing her job satisfactorily, and because Plaintiff "fails to point to any similarly-situated individuals outside her protected class who were treated more favorably." (Doc. 67 at 14).

### a.     Whether Plaintiff was Performing Satisfactorily

At issue is whether Plaintiff was performing her job satisfactorily. To satisfy the second element of her prima facie case, Plaintiff "need only produce substantial evidence of satisfactory job performance sufficient to create a jury question on this issue." *Douglas*, 656 F.2d at 533. *See also Chuang*, 225 F.3d at 1124 ("[T]he plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment" because "the ultimate question is one that can only be resolved through a searching inquiry–one that is most appropriately conducted by a factfinder, upon a full record.") (internal quotations omitted).[7]

In support of its claim that Plaintiff was not performing her work satisfactorily, (Doc. 67 at 14), Defendant points to various deposition testimony, emails, and Plaintiff's

---

[7] Notably, the "issue of satisfactory job performance permeates the prima facie case as well as the rebuttal and pretext issues." *Douglas v. Anderson*, 656 F.2d 528, 533 n. 5 (9th Cir. 1981). However, an employer's production of significant rebuttal evidence does not necessarily preclude a finding that a plaintiff has met the burden of producing substantial evidence of satisfactory job performance for the purposes of establishing a prima facie case. *See id.*

written reprimand from the District in order to establish that Plaintiff: lacked expertise in SQL system programming, (Doc. 68 ¶ 14); resisted learning and using SQL, (Doc. 68 ¶¶ 14, 39); failed to meet deadlines, (Doc. 68 ¶ 21); did not actively communicate when she ran into project delays or needed help, (Doc. 68 ¶ 35); and made mistakes including incorrectly uploading certain information on September 3, 2014 and failing to properly code new student attendance information on September 9, 2014, (Doc. 68 ¶¶ 36, 40). Defendant also points out the fact that Plaintiff wrote: "I do not have enough SQL Query and Report Builder experience to meet deadlines" on each of the three transfer request forms she completed in September 2014 as evidence that "Plaintiff, by her own admission, lacked the skills necessary to satisfactorily perform her duties." (Doc. 67 at 14; Doc. 68 ¶ 46).

Contrarily, Plaintiff claims that she had "a long and well-established record of satisfactory performance." (Doc. 83 at 15). To rebut Defendant's argument on this point, Plaintiff stated that the Written Reprimand she acquired on September 15, 2014 was the first disciplinary action she received in her entire 13 year tenure with the District, (Doc. 77 ¶ 78; Doc. 77-1 at 133, ¶ 4), and noted she was never placed on a performance improvement plan, (Doc. 77 ¶ 79; Doc. 77-1 at 134, ¶ 5). Plaintiff also avers that: she never refused to use SQL and continued to use Linux pursuant to Ms. Hyman's instruction to support the users of Linux-based programs, (Doc. 77 ¶ 87; Doc. 77-1 at 134-36, ¶¶ 8-13, 20); she regularly used SQL, (Doc. 77 ¶ 88; Doc. 77-1 at 135, ¶¶ 13, 15); the error she made on September 3, 2014 where she incorrectly uploaded student information was not arduous to correct and Plaintiff fixed this error in minutes, (Doc. 77-1 at 136, ¶ 22-23); her error on September 9, 2014 was the result of Ms. Hyman sending her the incorrect instructions, (Doc. 77-1 at 136, ¶ 24); and she only wrote "I do not have enough SQL Query and Report Builder experience to meet deadlines" on the transfer request forms she completed because she "was under duress and feared further discriminatory and retaliatory actions from Ms. Hyman," (Doc. 77-1 at 137, ¶¶ 28). Plaintiff's only support for these statements is her deposition testimony and unsigned

Declaration[8] in support of her Response to Defendant's Motion for Summary Judgment. *See* (Doc. 77-1 at 133-38). Nevertheless, Plaintiff's own deposition and declaration testimony, albeit uncorroborated and self-serving, are sufficient to establish a genuine dispute of material fact on the issue of satisfactory job performance at the summary judgment stage since Plaintiff's testimony is "based on personal knowledge, legally relevant, and internally consistent." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 498 (9th Cir. 2015). *See also Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 660 (9th Cir. 2002) (noting that an employee's own statement that he was performing at a level equal to that of other employees may be sufficient to establish a prima facie case even though such self-assessment testimony regarding job performance is not enough to create a triable issue of fact on the question of pretext).

Further, Plaintiff claims she achieved satisfactory performance ratings throughout her tenure in Defendant's employ, (Doc. 77 ¶ 75-76), pointing to her April 30, 2014 performance evaluation, (Doc. 77-1 at 140-42). This evaluation assessed Plaintiff's performance in seven areas and applied a one through four rating scale, with a one being "unsatisfactory" and a four designating that the employee "exceeds expectations." (Doc. 77-1 at 140-42). A rating of three indicated the employee's performance was "satisfactory." (Doc. 77-1 at 140-42). In this April 2014 evaluation, made just five months prior to Plaintiff's termination, Plaintiff was rated at three in five of the seven performance areas: attendance/punctuality, grooming and dress, human relations skills, accepts direction, and project completion. (Doc. 77-1 at 140-42). In the other two performance areas, decision making and teamwork, Plaintiff received ratings of two, a grade indicating the employee "needs specific improvement" in those areas. (Doc. 77-1 at

---

[8] With respect to the *non-movant's* evidence offered in opposition to a motion for summary judgment, the Ninth Circuit has stated that the proper inquiry is not the admissibility of the evidence's form, but rather whether the *contents* of the evidence are admissible. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the *nonmoving party* must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." (emphasis added)).

140-42).[9]

Beyond this performance evaluation, Plaintiff also set forth evidence that she received regular pay increases throughout her tenure with the District, including a pay increase in her contract for the 2014–2015 school year. (Doc. 77 ¶ 77; Doc. 77-1 at 133, ¶ 3). These facts support the conclusion that Plaintiff's performance is in dispute. *See Swan v. Bank of Am. Corp.*, No. 207-CV-00217-PMP-LRL, 2008 WL 2859066, at *5 (D. Nev. July 22, 2008), *aff'd sub nom. Swan v. Bank of Am.*, 360 F. App'x 903 (9th Cir. 2009) (determining that the plaintiff "presented a prima facie showing of satisfactory performance" where the plaintiff offered as evidence "her own declaration that she was doing a satisfactory job, receiving bonuses, and achieving improved customer service scores"); *Berdan v. Ortho-McNeil Pharm., Inc.*, No. C-96-207-VRW, 1997 WL 811782, at *2-3 (N.D. Cal. Dec. 31, 1997) (finding that the plaintiff demonstrated a genuine dispute of material fact on the satisfactory performance element where the plaintiff pointed to her "11 years of commendable and satisfactory service as evidence that she was performing her job in a satisfactory manner").

To rebut Defendant's claims that she was not performing satisfactorily, Plaintiff also points to the deposition testimony of Gail King, Plaintiff's immediate supervisor from 2007 until September 1, 2012. (Doc. 77 ¶¶ 83-84). Even after Ms. King was no longer Plaintiff's direct supervisor, Ms. King continued to work for the District's IT Department as an independent contractor. (Doc. 77 ¶¶ 83-84). In her deposition, Ms. King indicated that she disagreed with the District's decision to terminate Plaintiff because she knew Plaintiff to be a hard-worker, and because there was still work that Plaintiff could do for the District in Linux and Infinite Campus. (Doc. 77 ¶¶ 83-84; Doc. 77-1 at 91, King Depo. 38:10-25). Coupled with Plaintiff's April 2014 performance review indicating that her performance was satisfactory five months prior to her

---

[9] Despite the fact that Plaintiff was employed by the District for thirteen years, Defendant only produced two of Plaintiff's performance evaluations. (Doc. 77 ¶ 76). Beyond Plaintiff's April 30, 2014 evaluation, described above, the only other performance evaluation in the record is dated May 19, 2010. *See* (Doc. 77-1 at 144-46).

termination, Ms. King's deposition testimony also constitutes evidence creating a genuine dispute of fact as to whether Plaintiff was performing satisfactorily. *See Bahri v. Home Depot USA, Inc.*, 242 F. Supp. 2d 922, 946 (D. Or. 2002) (noting that the plaintiff presented sufficient evidence that he was performing satisfactorily to support a prima facie case of age discrimination where he uniformly met job expectations in his performance reviews and appraisals prior to the arrival of an allegedly discriminatory supervisor).

Finally, the Court notes that both Plaintiff and Defendant have introduced in the record an Earning Capacity Evaluation completed by Defendant's vocational expert which demonstrates a genuine dispute of material fact on the issue of satisfactory performance.[10] Despite Defendant's contentions that Plaintiff lacked expertise in SQL programming (Doc. 68 ¶ 14; Doc. 84 at 7), Defendant's own vocational expert indicated in his Earning Capacity Evaluation that he believed Plaintiff was a qualified candidate for positions such as "SQL Developer" and "SQL Database Administrator." (Doc. 75-1 at 38). Defendant's expert opined that these are jobs which "Ms. Marquez could obtain, perform and maintain considering her skills." (Doc. 75-1 at 38-39). Accordingly, the Court finds that there is a genuine dispute of material fact on the issue of satisfactory performance for this additional reason as well. As a result, Plaintiff has made a showing sufficient to meet the satisfactory performance element of her prima facie case.

### b. Whether the Circumstances of Plaintiff's Termination Establish an Inference of Discrimination

Also at issue is whether Plaintiff can show that the circumstances of her discharge from Defendant's employ give rise to an inference of discrimination. A plaintiff can establish an inference of discrimination by "showing the employer had a continuing need for [the employee's] skills and services in that [her] various duties were still being

---

[10] Plaintiff introduced this Earning Capacity Evaluation into the record in support of her Motion for Partial Summary Judgment, (Doc. 69-2 at 2-41), while Defendant introduced the same in support of its Response in opposition to Plaintiff's Motion for Partial Summary Judgment, (Doc. 75-1 at 4-43). Although this Evaluation was not cited in support of either party's position on this satisfactory performance element, the Court is permitted to "consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

performed . . . or by showing that others not in [her] protected class were treated more favorably." *Diaz*, 521 F.3d at 1207-08 (citation omitted). This element can also be met by a showing that the plaintiff was "replaced by a substantially younger employee with equal or inferior qualifications." *Coleman*, 232 F.3d at 1281 (citing *Nidds*, 113 F.3d at 917).

Defendant claims that Plaintiff is unable to meet this fourth element of her prima facie case of age discrimination because Plaintiff "fails to point to any similarly-situated individuals outside her protected class who were treated more favorably." (Doc. 67 at 14). In support of this contention, Defendant asserts that Plaintiff received the same opportunity for SQL training as her coworkers. (Doc. 67 at 14-15; Doc. 68 ¶¶ 17-20). Nevertheless, Plaintiff has presented evidence that at least one individual "similarly situated"[11] to her—another non-supervisor programmer—received additional SQL training which Plaintiff was not afforded the opportunity to attend. (Doc. 77 ¶¶ 18, 93). Specifically, Plaintiff indicated that Ashley Hyman, born in 1986 and thus outside of Plaintiff's protected class, attended SQL Reporting training in 2010, (Doc. 77 ¶¶ 16, 18, 93), which was prior to the time Ms. Hyman became Plaintiff's supervisor, (Doc. 68 ¶ 15). Additionally, Plaintiff demonstrated that she requested SQL Reporting training, but Defendant never allowed her to attend this training with an external provider as they had permitted Ms. Hyman to do. (Doc. 77 ¶¶ 91-95; Doc. 77-1 at 135, ¶¶ 16-19). Therefore, Plaintiff has presented sufficient evidence to establish a genuine dispute of material fact as to whether she received the same opportunity for SQL training as her coworkers, and, accordingly, whether she was treated less favorably than similarly-situated individuals outside of her protected class.

---

[11] The Ninth Circuit has "upheld inferences of discriminatory motive based on comparative data involving a small number of employees when the plaintiff establishes that he or she is 'similarly situated to those employees in all material respects.'" *Beck v. United Food & Commercial Workers Union, Local 99*, 506 F.3d 874, 885 (9th Cir. 2007) (quoting *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)). "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004).

Plaintiff also introduced evidence that two individuals younger than her[12]—Ben Guidry and Kevin Greenberg—were promoted to Computer Programming positions on or about July 1, 2015.[13] (Doc. 77 ¶¶ 106, 108; Doc. 83 at 12). Specifically, Mr. Guidry was born in 1989, and Mr. Greenberg was born in 1985. (Doc. 77-2 at 2). As individuals younger than forty promoted to the same job from which Plaintiff had been terminated, Mr. Guidry and Mr. Greenberg constitute similarly situated individuals outside of Plaintiff's protected class who were treated more favorably than Plaintiff. *See Diaz*, 521 F.3d at 1207-08 (citation omitted). Further, with regard to Mr. Guidry, Plaintiff has made a showing that she was "replaced by a substantially younger employee with equal or inferior qualifications." *Coleman*, 232 F.3d at 1281 (citation omitted). Specifically, Mr. Alcock's deposition testimony indicates that, in his opinion, Mr. Guidry did not appear to have any programming experience when Mr. Alcock began working with him, (Doc. 77-1 at 56, Denis Alcock Depo. at 42: 10-25, 43: 1-9, 57: 11-25, 58: 1-7), whereas Plaintiff had been working as a programmer for Defendant since October 2001, (Doc. 68 at ¶¶ 1, 63). Mr. Alcock also states in his deposition that although he believed Mr. Guidry was "doing good work in SQL," Mr. Guidry's tasks were "not to the degree that Louise was asked to do." (Doc. 77-1 at 58, Denis Alcock Depo. at 57: 9-25, 58: 1-7). Accordingly, Plaintiff has made a showing sufficient to meet the fourth element of her prima facie

---

[12] Plaintiff also noted that another individual younger than Plaintiff, Chad Barclay, was promoted to the Computer Programmer position "on or about 2015." (Doc. 77 ¶ 107; Doc. 83 at 12). Nevertheless, Mr. Barclay was born in 1963, and was well over forty years of age at the relevant time. (Doc. 77-2 at 2). As Mr. Barclay falls within the same protected category as Plaintiff with respect to age, Plaintiff cannot use Mr. Barclay as a comparator to show that "others not in [her] protected class were treated more favorably." *Diaz*, 521 F.3d at 1207-08 (citation omitted). *See Delos Santos v. Potter*, 371 F. App'x 746, 748 (9th Cir. 2010) (affirming district court's grant of summary judgment in favor of defendant on plaintiff employee's ADEA claim where plaintiff failed to demonstrate that he was treated differently than a similarly situated employee who did not belong to the same protected class as a matter of age where comparator, Mr. Regacho, was 47 at the relevant time and therefore fell within the same protected class as plaintiff, who was 56). Notably, Plaintiff, who was born in 1954, and Mr. Barclay share a nine year age difference, just as the plaintiff in *Delos Santos* and his comparator. (Doc. 68-1 at 61); *Delos Santos*, 371 F. App'x at 748.

[13] This was approximately nine months after the termination of Plaintiff's employment on October 1, 2014. (Doc. 68 ¶¶ 1, 63).

case.

Defendant relies upon comparator evidence in an effort to defeat an inference of age discrimination, claiming that two of Plaintiff's "peers" during the relevant time period were also over the age of 40. (Doc. 67 at 15; Doc. 68 ¶¶ 73-74). However, this argument is inapposite. "Under *McDonnell Douglas,* a plaintiff must show that an employer treated similarly situated individuals *outside* the plaintiff's protective class more favorably, not that the employer treated all other members *within* the class less favorably." *Chuang*, 225 F.3d at 1124 n. 8. Thus, the fact that Defendant has pointed to other individuals within Plaintiff's class who allegedly worked for the District in the same time frame is irrelevant. Moreover, Plaintiff revealed that one of these "peers" pointed out by Defendant actually retired from the District as of July 1, 2014 and thereafter only worked as an independent contractor. (Doc. 77 ¶ 105; Doc. 83 at 12 n. 7). Accordingly, because that peer no longer worked as a full-time computer programmer at the time Plaintiff's position was dissolved, he was not "similarly situated" to Plaintiff and cannot be used as a comparator by Defendant. *See Vasquez*, 349 F.3d at 641, *as amended* (Jan. 2, 2004) ("[I]individuals are similarly situated when they have similar jobs and display similar conduct.").

Ultimately, Plaintiff has produced evidence refuting Defendant's contention that she is unable to establish that the circumstances of her discharge give rise to an inference of discrimination. As a result, Plaintiff has made a showing sufficient to her prima facie case.

### 2. Legitimacy of Defendant's Explanation for the Termination of Plaintiff's Employment

Because Plaintiff established a prima facie case, a presumption of discrimination was raised, thereby shifting the burden to Defendant to produce evidence that Plaintiff was discharged for a legitimate, nondiscriminatory reason. *See Douglas*, 656 F.2d at 533. This requires the employer only "to set forth a legally sufficient explanation" for the adverse employment action taken. *Lowe v. City of Monrovia*, 775 F.2d 998, 1007 (9th Cir. 1985). The employer's burden is "one of production, not persuasion, thereby

involving no credibility assessment." *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1148-49 (9th Cir. 2006) (citation omitted).

Here, Defendant has produced evidence indicating that Plaintiff's position was dissolved as part of a restructuring in the IT department and due to the IT department's need for a programmer with SQL experience. (Doc. 67 at 15; Doc. 84 at 8). According to Defendant, the District began discussing and planning a reorganization of its IT department in early August 2014 (before Plaintiff had ever called in sick) when Jordan Beveridge, the IT Director at the time, notified the District that he had accepted another job. (Doc. 68 ¶¶ 27-28). Defendant notes that the restructuring discussions included selecting Josh Dean to head the IT department, the elimination of Plaintiff's Linux-based position, and the approval of a new programmer job description emphasizing the need for SQL skills in light of the District's "virtual completion of the District's transition" to an SQL-based system. (Doc. 68 ¶¶ 28-29, 32, 38). Due to the District's "new computer system being SQL-based," Defendant claims that "there was no longer a need for a Programmer without SQL skills such as Plaintiff." (Doc. 84 at 9). Further, Defendant presented evidence indicating that when Mr. Hernandez called Plaintiff to inform her that her position had been eliminated due to the restructure, Mr. Hernandez told Plaintiff that she was entitled to reapply for any available position within her department or elsewhere in the District. (Doc. 84 at 9).

The Court finds that this evidence satisfies Defendant's burden to articulate a legitimate, non-discriminatory reason for the elimination of Plaintiff's employment at the District. Defendant has "clearly set forth through the introduction of admissible evidence, reasons for its employment decision which, if believed by the trier of fact, would support a finding that the employment action was not a result of unlawful discrimination." *Noyes*, 488 F.3d at 1169 (citation and internal quotations omitted); *see also Aragon*, 292 F.3d at 661 (holding that poor job performance constitutes a legitimate, nondiscriminatory reason for terminating the plaintiff's employment); *Winarto v. Toshiba Am. Elec. Components, Inc.*, 274 F.3d 1276, 1295 (9th Cir. 2001) (holding that a reduction in force constituted a

legitimate, nondiscriminatory reason for terminating employee).

### 3. Pretext

Once the employer articulates a legitimate, nondiscriminatory reason for the challenged action, the burden then shifts back to the plaintiff to raise a genuine factual question as to whether the proffered reason is pretextual. *Lowe*, 775 F.2d at 1008. The plaintiff can prove pretext "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang,* 225 F.3d at 1124. "All of the evidence—whether direct or indirect—is to be considered cumulatively." *Shelley*, 666 F.3d at 609 (citing *Chuang,* 225 F.3d at 1124). Although the plaintiff may use circumstantial evidence to show pretext, the evidence must be "specific" and "substantial." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994). Nevertheless, due to the "inherently factual nature of the inquiry, the plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of fact." *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir. 1991).

Plaintiff is able to produce specific, substantial evidence of pretext by showing Defendant's explanation may be unworthy of credence. In response to Defendant's claim that Plaintiff was terminated because "her position was dissolved due to the IT restructure and the need for a programmer with SQL experience," (Doc. 84 at 8), Plaintiff offered evidence that the District promoted another employee, Mr. Guidry, to computer programmer despite his lack of experience in SQL just nine months after the termination of Plaintiff's employment. (Doc. 68 ¶¶ 1, 63; Doc. 77-1 at 56-58, Alcock Depo., at 42: 10-25, 43: 1-9, 57: 9-25, 58: 1-7; Doc. 83 at 16). Beyond suggesting that Defendant's termination decision was insincere and dishonest, Plaintiff's proffered evidence creates a factual dispute as to whether she was better qualified for the computer programmer position than Mr. Guidry. Compared to Mr. Guidry, Plaintiff presented evidence (beyond

her own self-serving statements[14]) that she was able to perform SQL based tasks at a higher level than Mr. Guidry. *See* (Doc. 77-1 at 58, Alcock Depo., at 57: 9-25, 58: 1-7) (stating that although he believed Mr. Guidry was "doing good work in SQL," Mr. Guidry's tasks were "not to the degree that Louise was asked to do."). "Evidence of a plaintiff's superior qualifications, standing alone, may be sufficient to prove pretext." *Shelley*, 666 F.3d at 610 (citing *Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003) and *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1492 (9th Cir. 1995) ("A district court's finding that a Title VII plaintiff's qualifications were clearly superior to the qualifications of the applicant selected is a proper basis for a finding of discrimination.")).

To the extent that this argument by Plaintiff resembles that made by Plaintiff in her prima facie case to demonstrate that the circumstances of her termination establish an inference of discrimination, *supra*, the Court acknowledges that Plaintiff cannot satisfy her burden as to pretext "simply by restating the prima facie case and expressing an intent to challenge the credibility of the employer's witnesses." *Lindahl*, 930 F.2d at 1437-38. "Still, because of the inherently factual nature of the inquiry, the plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of fact." *Id.* at 1438.

Plaintiff also contends that Defendant's failure to follow its policy and practice of placing Plaintiff on a performance improvement plan prior to her termination is evidence of pretext. (Doc. 83 at 16). Notably, "[a] plaintiff may also raise a triable issue of pretext through evidence that an employer's deviation from established policy or practice worked to her disadvantage." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1117 (9th Cir. 2011). In this case, Plaintiff points to the deposition testimony of Tom Hernandez, the Human Resources Director, indicating that, although not a requirement, it is strongly suggested that District employees follow progressive discipline. (Doc. 77 ¶ 115-16; Doc.

---

[14] *See Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 660 (9th Cir. 2002) (noting that an employee's own statement that he was performing at a level equal to that of other employees may be sufficient to establish a prima facie case even though such self-assessment testimony regarding job performance is not enough to create a triable issue of fact on the question of pretext).

77-1 at 12, Hernandez Depo., 183: 6-19). According to Hernandez's deposition testimony, this progressive discipline policy includes various levels of discipline including verbal warnings, receipt of a memo of understanding, receipt of a letter of reprimand, suspension (with or without pay), and, ultimately, recommendation for termination. (Doc. 77 ¶ 115; Doc. 77-1 at 7, Hernandez Depo., 34:16-35:22). Further, Hernandez indicated in his deposition that he follows this progressive discipline procedure, (Doc. 77-1 at 7, Hernandez Depo., 35:14-22), and that his responsibilities generally include "uphold[ing] board policy," (Doc. 77-1 at 5, Hernandez Depo. 16:24-17:8).

Despite the District's established practice of progressive discipline, Plaintiff did not receive a memo of understanding prior to receiving a letter of reprimand, and, further, did not receive any temporary suspension prior to her termination. Rather, Defendant deviated from its established policy and practice, which ultimately worked to Plaintiff's disadvantage because she was not "afforded the same opportunity to improve" as those placed on a progressive discipline plan. (Doc. 83 at 16). Viewing this evidence in the light most favorable to Plaintiff, the Court finds that reasonable jurors could conclude that this irregularity further undermines the credibility of Defendant's proffered reasons for terminating Plaintiff's employment. *See, e.g.*, *Johnson v. Fred Meyer Stores, Inc.*, No. 1:04-CV-0008-RRB, 2007 WL 9697954, at *2 (D. Alaska Oct. 1, 2007) ("[I]f Defendants' purpose for disciplining and terminating Plaintiff was based on a legitimate concern about her work performance, it would be expected that progressive discipline would be applied."). *See also Hannan v. Bus. Journal Publications, Inc.*, No. 3:14-CV-00831-SB, 2015 WL 9265959, at *9, 12-13 (D. Or. Oct. 2, 2015) (determining that a reasonable fact finder could conclude that the elimination of plaintiff's job was mere pretext for her termination due to age in part because defendants failed to use their published progressive discipline policy with plaintiff, despite evidence in the record that defendants previously used progressive discipline to discharge an employee for poor performance); *Murrell-Travland v. On Q Fin., Inc.*, No. CV-11-01622-PHX-GMS, 2012

WL 5269387, at *6 (D. Ariz. Oct. 23, 2012) (finding that the defendant's failure to follow its own internal progressive discipline policy which sets out a tripartite system of discipline including a verbal warning, written warning and termination is evidence from which the plaintiff could argue "that she was not, in fact, underperforming and was terminated for a pretextual reason").

In further support of her contention that Defendant's proffered reasons are untrue, Plaintiff presents evidence from both Mr. Dean and Mr. Beveridge's depositions indicating that the elimination of Plaintiff's position as part of the restructuring of the IT department was neither discussed nor contemplated *prior* to the time that Plaintiff began taking days off in September 2014. (Doc. 83 at 16-17; Doc. 77 ¶¶ 109-112). In support of its stance that the restructuring discussions included the elimination of Plaintiff's position, Defendant set forth Mr. Hernandez's testimony from his deposition that he believed he may have discussed eliminating Plaintiff's position prior to September 15, 2014 with Mr. Dean, (Doc. 68 ¶ 4; Doc. 77-1 at 10, Hernandez Depo. 76: 16-22). In opposition, Plaintiff points to Mr. Dean's deposition testimony averring that Mr. Dean was not part of the decision to terminate Plaintiff, and that Mr. Dean did not have knowledge of any decision to terminate Plaintiff's employment due to restructuring. (Doc. 77 ¶ 127; Doc. 77-1 at 44-45, Dean Depo at 42: 1-8, 43: 11-15, 52: 23-25). Rather, Mr. Dean only learned of plaintiff's termination after she had already been terminated by Mr. Hernandez. *Id.* Mr. Beveridge's deposition testimony also indicates that he first learned of Plaintiff's termination not during these restructuring discussions but, rather, months later. (Doc. 77-1 at 75, Beveridge Depo. at 50:19-52:7). This showing by Plaintiff suggests that Defendant's "legitimate, non-discriminatory reason" for eliminating Plaintiff's employment because of the restructuring is inconsistent with the record and thus unworthy of credence.

All of these considerations, taken together, are sufficient to carry Plaintiff's burden to "produce 'specific' and 'substantial' facts to create a triable issue of pretext." *Earl*, 658 F.3d at 1113. As the Ninth Circuit has stated, "[i]n evaluating motions for

summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004) (citations omitted). The evidence before the Court creates such a sufficient dispute of material fact to render summary judgment inappropriate. As a result, the Court denies Defendant's Motion for Summary Judgment on Plaintiff's Third Cause of Action for age discrimination.

## B. Disability Discrimination under the ADA and the Rehabilitation Act

Defendant has moved for summary judgment on Plaintiff's Fourth Cause of Action alleging disability discrimination under the ADA, and on Plaintiff's Sixth Cause of Action alleging disability discrimination under the Rehabilitation Act. As the standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the ADA,[15] the Court will analyze Plaintiff's Fourth and Sixth Causes of Action in tandem.

The ADA and the Rehabilitation Act both prohibit discrimination against qualified individuals on the basis of disability. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). Under these statutes, acts of discrimination include discharging an individual because of such disability or failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 42 U.S.C. § 12112(b)(5)(A); *see also* 29 C.F.R. § 1630.9(a). Title I of the ADA applies to covered entities including employers with "15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year," 42 U.S.C. §§ 12111(2), (5)(A), whereas the Rehabilitation Act "proscribes discrimination in all federally-funded programs." *Lovell v.*

---

[15] 29 U.S.C. § 794(d). *See also Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004); 29 C.F.R. § 1614.203(b).

*Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).[16] The parties here do not dispute that Defendant is a covered entity receiving federal funding, and thus is subject to the requirements of both the ADA and the Rehabilitation Act.[17]

### 1. The Prima Facie Case

To establish disability discrimination under the ADA or Rehabilitation Act, a plaintiff must show that:

> (1) she is "disabled" within the meaning of the statute; (2) she is a "qualified individual" (that is, she is able to perform the essential functions of her job, with or without reasonable accommodations); and (3) she suffered an adverse employment action "because of" her disability.

*Vasquez v. Smith's Food & Drug Centers, Inc.*, No. CV-14-2339-TUC-DCB, 2017 WL 1233840, at *4 (D. Ariz. Apr. 4, 2017) (citing *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001)); *see also Lovell*, 303 F.3d at 1052; *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 (9th Cir. 1999).

If the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n. 3 (2003) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). "If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual." *Id.* (citation omitted).

### a. Whether Plaintiff was "Disabled"

At issue is whether Plaintiff was "disabled" as defined by the ADA and Rehabilitation Act at the time that the District terminated her employment. An individual is "disabled" if that individual has: (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of

---

[16] The Rehabilitation Act "applies to all public schools that receive federal financial assistance." *Mark H. v. Lemahieu*, 513 F.3d 922, 929 (9th Cir. 2008) (citation omitted).

[17] *See* (Doc. 67 at 9; Doc. 83 at 3).

such an impairment;" or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1); *Coons*, 383 F.3d at 884. An individual "need fit only one of the three definitions to be disabled for purposes of the ADA." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1153 (9th Cir. 1997). The employee "bears the ultimate burden of proving" that she is disabled. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007) (citing *Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999)). "Therefore, for summary judgment to be appropriate, there must be no genuine issue of material fact regarding whether [the plaintiff] has an impairment that substantially limits a major life activity, has a record of such an impairment, or is regarded as having such an impairment." *Coons*, 383 F.3d at 884. Moreover, at the summary judgment stage, the Ninth Circuit does not require comparative or medical evidence to establish a genuine issue of material fact regarding the substantial limitation of a major life activity; rather, a "plaintiff's testimony may suffice to create a genuine issue of material fact." *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 858 (9th Cir. 2009) (citing *Head v. Glacier Nw., Inc.*, 413 F.3d 1053, 1058 (9th Cir. 2005)).

Defendant argues there is no evidence that Plaintiff was disabled in September 2014, claiming that, "[a]t most, Plaintiff informed Defendant of a mere diagnosis, but made no mention whatsoever of how that diagnosis would substantially limit any life activity at any time before her employment ended." (Doc. 67 at 10). In response, Plaintiff states: "[a] brain tumor that makes a person too ill to work is clearly a 'disability' under the ADA and the Rehabilitation Act." (Doc. 83 at 3). Plaintiff supports this statement by citing: the ADA's definition of disability, 42 U.S.C. § 12102(1)(A); a portion of the EEOC's implementing regulations indicating that cancer substantially limits the major life activity of normal cell growth, 29 C.F.R. § 1630.2(j)(3)(iii); and a case from the Eastern District of Texas discussing whether the plaintiff's cancer is capable of qualifying as a disability under the ADA, *Norton v. Assisted Living Concepts, Inc.*, 786 F. Supp. 2d 1173, 1184 (E.D. Tex. 2011).

The Court agrees that brain cancer[18] is *capable* of qualifying as a disability under the ADA and the Rehabilitation Act. The ADA indicates that an impairment which substantially limits one major life activity, such as normal cell growth, need not limit other major life activities, such as working, in order to be considered a disability. *See* 42 U.S.C. § 12102(2)(B), 12102(4)(A-C). Further, the EEOC's implementing regulations provide a list of impairments that, because they substantially limit a major life activity, will "in virtually all cases, result in a determination of coverage under [the actual disability prong]." 29 C.F.R. § 1630.2(j)(3)(ii). One of the impairments listed is "cancer" because it "substantially limits [the major life activity] of normal cell growth." *Id.* at § 1630.2(j)(3)(iii).

Nevertheless, just because cancer is capable of qualifying as a disability under these statutes does not mean that Plaintiff's brain tumor necessarily constitutes a disability in this case. Rather, the existence of a disability is determined on a case-by-case basis, a mandate the ADA clearly expresses "by defining 'disability' 'with respect to an individual,' 42 U.S.C. § 12102(2), and in terms of the impact of an impairment on 'such individual,' § 12102(2)(A)." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999).

An impairment "substantially limits" a major life activity when an individual is either unable to perform that major life activity or "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii). When "deciding whether an impairment is substantially limiting, the court 'must consider the nature and severity of the [plaintiff's] impairment, the duration or expected duration of the impairment, as well as the permanent or long term impact of the impairment.'" *Rohr*, 555 F.3d at 858 (quoting *Fraser*, 342 F.3d at 1038).

Further, the term "substantially limits" is to be "construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." 29 C.F.R. §

---

[18] Although Plaintiff cites a portion of the EEOC's implementing regulations discussing cancer in her Response, the Court notes that Plaintiff never explicitly alleges that she has cancer. Rather, Plaintiff only refers to her alleged disability as a brain tumor.

1630.2(j)(1)(i); *see also* 42 U.S.C. § 12102(4)(A-C). An impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). While courts must make "a case-by-case" determination, *Albertson's, Inc.*, 527 U.S. at 566, the court should primarily focus on:

> whether [employers] have complied with their obligations and whether discrimination has occurred, not [on] whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment "substantially limits" a major life activity should not demand extensive analysis.

29 C.F.R. § 1630.2(j)(2)(iii).[19]

In this case, Plaintiff alleges she has a brain tumor. Nevertheless, nowhere in her Amended Complaint or Response does Plaintiff identify what substantial life activities her brain tumor limits, nor discuss the severity or expected duration of this impairment. Plaintiff has not even indicated whether she experiences any symptoms from her brain tumor, or alleged that such symptoms impact her ability to work.[20] However, assuming

---

[19] The Court notes that the ADA Amendments Act of 2008 ("ADAA"), Pub.L. 110–325, 122 Stat. 3553 (2008), effective January 1, 2009, applies to this case because Plaintiff was removed from her position effective October 1, 2014. The ADAA broadens the scope of the ADA by expanding its definition of disability, and makes it easier for plaintiffs to establish that they are disabled under the ADA. *See Rohr*, 555 F.3d at 853; *Eastman v. Research Pharm., Inc.*, No. CIV.A. 12-2170, 2013 WL 3949236, at *8 (E.D. Pa. Aug. 1, 2013).

[20] Although Plaintiff does not refer to her deposition testimony in order to establish that her brain tumor substantially limits any major life activities, the Court notes that a portion of this testimony could indicate that Plaintiff's brain tumor might substantially limit the major life activity of hearing. *See* 42 U.S.C. § 12102(2)(A) (stating that hearing is a major life activity). The relevant portion of Plaintiff's deposition states:

> Q: Now, you also testified . . . about several medical issues that you had, one is the brain tumor, right?
> A: Yes, sir.
> Q: And you testified . . . that you were diagnosed with that condition a few years before September 2014, right?
> A: Yes, sir.
> Q: You never told anybody about that?
> A: Correct.
> Q: You said that issue with the brain tumor was prompted by an issue you were having with hearing loss, right?
> A: I have hearing loss because of the brain tumor, yes, sir.

- 29 -

without deciding that Plaintiff's brain tumor constitutes a qualifying disability,[21] she nonetheless cannot meet the other two elements necessary to demonstrate a prima facie case under the ADA.

### b. Whether Plaintiff is a "Qualified Individual"

Also at issue is whether Plaintiff is a "qualified individual." An individual is qualified if "with or without reasonable accommodation, [she] can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). The "essential functions" of a job are the individual's "fundamental duties." *Garcia v. Johnson*, 630 F. App'x 684, 686 (9th Cir. 2015) (citations omitted); *see also* 29 C.F.R. § 1630.2(n). The plaintiff bears the burden of proving he or she can perform the job's essential functions, and thus is "qualified." *Bates*, 511 F.3d at 990. Consequently, if the plaintiff cannot perform the job's essential functions—even with a reasonable accommodation—then the ADA's protections do not apply. *Id.* at 989 (citing *Cripe v. City of San Jose*, 261 F.3d 877, 887 (9th Cir. 2001)).

In this case, Defendant argues that even if Plaintiff's brain tumor constituted a disability, she was not a qualified individual because she could not perform the essential functions of her position. (Doc. 67 at 10). Plaintiff does not respond to this argument in her Response, or anywhere assert that she is a qualified individual under the ADA. (Doc. 83). Rather, Plaintiff argues that Defendant could have reasonably accommodated her "by allowing her to use her accrued paid sick leave and vacation time before terminating

---

(Doc. 77-1 at 36, Marquez Depo., 203:21-204:10). *See Estate of Murray v. UHS of Fairmount, Inc.*, No. CIV.A. 10-2561, 2011 WL 5449364, at *7-8 (E.D. Pa. Nov. 10, 2011) (declining to grant summary judgment on the issue of disability where the sole evidence of substantial limitation was the plaintiff's testimony that because of her depression, she experienced symptoms such as "[n]ot eating, not sleeping, having racing thoughts . . . [and] just feeling hopeless, helpless, sad."). Nevertheless, Plaintiff's case here is even less robust than that of the plaintiff in *Estate of Murray*, as Plaintiff has not actually alleged any symptoms she experiences as a result of her brain tumor.

[21] The Court recognizes that the record as to whether Plaintiff's brain tumor substantially limits her major life activities is sparse, to say the least. Nevertheless, given the requirements of the ADAA and the amendment's command to construe "disability" broadly, the Court declines to grant summary judgment on the basis of failing to show a "disability" under the ADA.

her employment" or by allowing Plaintiff "seven more days to provide medical records." (Doc. 83 at 7).[22]

It is true that a "leave of absence for medical treatment may be a reasonable accommodation under the ADA." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1135 (9th Cir. 2001). However, it remains that Plaintiff must be able to perform the essential functions of the job upon her return from such leave. *See id.* at 1128-29 ("We have held that where a leave of absence would reasonably accommodate an employee's disability and permit him, upon his return, to perform the essential functions of the job, that employee is otherwise qualified under the ADA."). Plaintiff bears the initial burden of showing that "the suggested accommodation would, more probably than not, have resulted in [her] ability to perform the essential functions of the job. *Buckingham v. United States*, 998 F.2d 735, 742 (9th Cir.1993). Merely asserting that the District *could have* accommodated her does not meet Plaintiff's burden of demonstrating that she *can* perform the essential functions of her job with such an accommodation.[23]

Rather than attempting to show that she is a qualified individual, Plaintiff's Response essentially suggests that she could have been afforded a reasonable

---

[22] Although Plaintiff proposes these hypothetical accommodations in her Response, the Court notes that Plaintiff never requested either of these accommodations from Defendant. *See infra.*

[23] Plaintiff's failure to respond to Defendant's argument that she is not a qualified individual and is incapable of performing the essential functions of her position serves as an alternative basis upon which summary judgment is granted for Defendant on this claim. *See* Fed. R. Civ. P. 56(e) (If a party "fails to properly address another party's assertion of fact," the Court may "consider the fact undisputed for purposes of the motion," or "grant summary judgment[.]"). Moreover, if Plaintiff "cannot sustain her burden of proving she is a qualified individual, able to perform the essential functions of her job with or without reasonable accommodation, then summary judgment against [Plaintiff] is proper on not just the disability discrimination claims, but also the claims alleging failure to accommodate and failure to engage in the interactive process" (to the extent Plaintiff argues them). *Rincon v. Am. Fed'n of State, Cty., & Mun. Employees*, No. 12-4158 MEJ, 2013 WL 4389460, at *9 (N.D. Cal. Aug. 13, 2013) (citing *Kramer v. Tosco Corp.*, 233 F. App'x 593, 596 (9th Cir. 2007) (plaintiff cannot state interactive process claim where plaintiff cannot do essential functions of the job with a reasonable accommodation); *Wilmarth v. City of Santa Rosa*, 945 F.Supp. 1271, 1279 (N.D. Cal. 1996) (no obligation to accommodate an employee who cannot perform the essential functions of the job); *Nadaf–Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal.App. 4th 952, 980-81 (2008) (plaintiff can state a claim for failure to accommodate only where reasonable accommodation would enable plaintiff to do essential functions of job)).

accommodation which would permit her to continue to not attend work. *See* (Doc. 83 at 7). "It is as if [Plaintiff] thinks that rather than ensuring that she be allowed to work, the ADA requires [Defendant] to provide her with a job but not require that she regularly perform it." *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999). The Court disagrees. First, "[t]he ADA does not require an employer to exempt an employee from performing essential functions[.]" *Dark v. Curry Cty.*, 451 F.3d 1078, 1089 (9th Cir. 2006). A majority of circuits, the Ninth Circuit included, "have endorsed the proposition that in those jobs where performance requires attendance at the job, irregular attendance compromises essential job functions." *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012). "Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform any of his job functions, essential or otherwise." *Id.* at 1239 (internal quotations omitted) (citing *E.E.O.C. v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 948 (7th Cir. 2001)); *see also Waggoner*, 169 F.3d at 482 ("The rather common-sense idea is that if one is not able to be at work, one cannot be a qualified individual.").

Here, regular and punctual attendance is explicitly set out as an essential duty on the District's job description for Plaintiff's computer programmer position. (Doc. 68-1 at 4); *see also* 42 U.S.C. § 12111(8) ("[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."). Plaintiff does not argue that on-site, regular attendance is not an essential function of her position, or argue that she could effectively perform all of her work from home. (Doc. 83). It is also undisputed that from September 16 through September 29, Plaintiff did not report to work but, rather, phoned or emailed in daily requests to use sick leave. (Doc. 68 ¶ 57; Doc. 77 ¶ 57).

Moreover, Plaintiff never gave any indication whether she would be absent or present at work the following day, which the Court finds constitutes such irregular

attendance as to compromise Plaintiff's ability to perform the essential functions of her position. Plaintiff's "performance is predicated on her attendance; reliable, dependable performance requires reliable and dependable attendance." *Samper*, 675 F.3d at 1241 (defendant was entitled to summary judgment on essential function question where written job description indicated that regular attendance was required but plaintiff could not regularly attend work). *See also Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1243 (9th Cir. 2013) (granting summary judgment in favor of employer on employee's disability discrimination claim where employee could not perform essential functions of job because employee's disability prevented her from performing any work); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1482 (9th Cir. 1996) (holding that employee who was "totally disabled" could not present "any genuine issue that she could have performed her job with the proposed, or any other, accommodation"). Accordingly, Plaintiff has not shown that she constitutes a qualified individual under the ADA. Summary judgment is therefore warranted on Plaintiff's discrimination claims under the ADA and Rehabilitation Act.

### c. Whether Plaintiff Suffered an Adverse Employment Action "Because of" Her Disability

Although Plaintiff's failure to carry her burden as to whether she is a qualified individual alone warranted the grant of summary judgment on Plaintiff's disability discrimination claims, the Court nonetheless considers whether Plaintiff can prove that she suffered an adverse employment action "because of" her disability. *Bates*, 511 F.3d at 989. "An adverse employment action is one that materially alters the 'terms and conditions' of the plaintiff's employment." *Mamola v. Group Mfg. Servs.*, No. CV–08–1687–PHX–GMS, 2010 WL 1433491, at *6 (D. Ariz. Apr. 9, 2010) (citing *Kang v. U. Lim. Am., Inc.*, 296 F.3d 810, 819 (9th Cir. 2002)). Discharging an individual because of a disability or failing to accommodate an individual's known disability constitute adverse employment actions. 42 U.S.C. §§ 12112(b)(1), 12112(b)(5)(A).

In her Amended Complaint, Plaintiff claims that she was subjected to less favorable treatment than similarly situated coworkers because of her disability. (Doc. 3

¶¶ 38, 46). In particular, Plaintiff asserts that Defendant failed to provide her with reasonable accommodations. (Doc. 83 at 2-8). A "reasonable accommodation" is defined as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). "An employer discriminates against an employee by not making reasonable accommodations to the *known* physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." *Blanchard v. Lahood*, 461 F. App'x 542, 544 (9th Cir. 2011) (internal quotations omitted) (emphasis added) (citing *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) and 42 U.S.C. § 12112(b)(5)(A)).

Defendant first asserts that Plaintiff's discrimination claims fail because Plaintiff "never provided the District with sufficient information from which it could determine the nature and scope of Plaintiff's alleged disability." (Doc. 84 at 1-2). Despite Plaintiff's claim that she told Ms. Hyman about her brain tumor on September 16, 2014 (which Ms. Hyman denies), the parties nevertheless agree that Plaintiff never shared any information regarding a treatment plan or the work-related impact of any diagnosis with Ms. Hyman, or with any other employee at the District. (Doc. 68-2 at 10-11, Marquez Depo., 110:22-111:15; Doc. 68-2 at 77-78, Hyman Depo., 43:23-44:9; Doc. 68 ¶ 51; Doc. 77 ¶ 51). The parties also agree that Plaintiff never told any other District employees that she was seeing a doctor for a brain tumor. (Doc. 77 ¶ 52; Doc. 68-2 at 10, Marquez Depo. 110:2-21). Accordingly, Defendant argues that–at most–Plaintiff informed the District of a mere diagnosis, (Doc. 67 at 10), but "did not provide any factual information or documentation about the nature of her illness" or ever "indicate she would be out longer than one day," (Doc. 84 at 2).

Contrarily, Plaintiff argues that the District had notice of her medical condition. (Doc. 83 at 6). Beyond asserting that she told Ms. Hyman that she was diagnosed with a

brain tumor, Plaintiff states that "the relevant decision-makers (Ms. Hyman, Mr. Dean, and Mr. Hernandez), were aware Plaintiff was suffering from a serious medical condition" and requesting sick leave. (Doc. 83 at 6). Specifically, Mr. Dean's deposition testimony indicates that he knew from either Mr. Hernandez or Ms. Hyman that Plaintiff had made statements about having "cancer" prior to the discussion of her termination. *See* (Doc. 69-1 at 53, Dean Depo. 74: 7-25. Furthermore, Plaintiff argues that even if Mr. Hernandez was unaware of Plaintiff's specific medical condition "he was certainly aware that she was having 'medical issues' by September 29, as he (along with Ms. Hyman and others) had received the emails requesting sick leave prior to that date." (Doc. 77 ¶ 62; Doc. 69-3 at 4, Depo. of Hernandez, 147:13-17 (indicating that, as of September 25, Mr. Hernandez was aware that Plaintiff was requesting sick leave)).

It is clear that if the District "were truly unaware that such a disability existed, it would be impossible for [any adverse employment action] to have been based, even in part, on [Plaintiff's] disability." *Raytheon Co.*, 540 U.S. at 54 n. 7. "An employer knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation." *Schmidt v. Safeway Inc.*, 864 F. Supp. 991, 997 (D. Or. 1994). However, "[w]hile knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts." *Alejandro v. ST Micro Elecs., Inc*, 129 F. Supp. 3d 898, 909 (N.D. Cal. 2015) (citations omitted). "Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations" under the ADA. *Id.* (citations omitted).

Further, "it is important to distinguish between an employer's knowledge of an employee's *disability* versus an employer's knowledge of any *limitations* experienced by the employee as a result of that disability. This distinction is important because the ADA requires employers to reasonably accommodate limitations, not disabilities." *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996) (emphasis added); *Leeds v.*

*Potter*, 249 F. App'x 442, 450 (6th Cir. 2007); *see also* 29 C.F.R. § Pt. 1630, App. ("Employers are obligated to make reasonable accommodations only to the physical or mental limitations resulting from the disability of an individual with a disability that is known to the employer"); 42 U.S.C. § 12112(b)(5)(A) (discrimination includes "not making reasonable accommodations to the *known physical or mental limitations* of an otherwise qualified individual with a disability who is an applicant or employee") (emphasis added). Therefore, "[t]he employer's knowledge of the physical [or] mental limitations resulting from the employee's disability is a prerequisite to the employer's obligation to make reasonable accommodations." *Foster v. City of Oakland,* No. C–08–01944 EDL, 2008 WL 3286968, at *2 (N.D.Cal. Aug. 5, 2008).

Here, Plaintiff failed to inform Ms. Hyman or anyone else at the District of the limitations that she experienced as a result of her brain tumor, and thus cannot establish that Defendant knew or had reason to know that she required an accommodation for such limitations. *See Matuska v. Hinckley Tp.*, 56 F.Supp.2d 906, 917-18 (N.D. Ohio 1999) (finding that employer did not know of employee's disabilities where neither employee nor his doctors ever advised the employer of the precise limitations resulting from his impairments). At most, Defendant here had knowledge that Plaintiff was diagnosed with a brain tumor, but this is not enough for Plaintiff to prove discrimination. "[K]nowledge of the impairments does not amount to knowledge of the limitations that resulted from those impairments." *Id.* at 918. "The ADA does not require an employer to assume that an employee with a disability suffers from a limitation." *Taylor*, 93 F.3d at 164. Since Plaintiff cannot show that Defendant knew she had an "impairment that substantially limits one or more life activities," 42 U.S.C. § 12102(2), Plaintiff cannot meet her prima facie case of discrimination.

Even if there were evidence that Plaintiff notified Defendant of the alleged limitations resulting from her brain tumor, Plaintiff never requested an accommodation and thus never triggered the District's duty to provide one.[24] Although Plaintiff asserts

---

[24] "The Ninth Circuit has held that notifying an employer of a need for an accommodation triggers a duty to engage in an 'interactive process' through which the

that she "requested an accommodation by requesting sick leave," (Doc. 77 ¶ 54), the Court disagrees. Generally, "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." 29 C.F.R. § Pt. 1630, App. The employee need only "inform the employer of a need for an adjustment due to a medical condition using 'plain English' and need not mention the ADA or use the phrase 'reasonable accommodation.'" *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000). The employer's duty to provide an accommodation is not triggered unless the employee "provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999); *Summers*, 127 F.3d at 1153 (holding no triable issue of fact existed where employee did not ask for an accommodation).

At no point did Plaintiff request a reasonable accommodation from Defendant. Rather, Plaintiff emailed or called in sick day by day, and each day Defendant granted Plaintiff's request for sick time. (Doc. 68 ¶ 57; Doc. 77 ¶ 57). Plaintiff never provided Defendant with any information sufficient to trigger the District's duty to provide an accommodation, as "her communications with the District were devoid of any detail relating to her condition and need for accommodation or leave." (Doc. 84 at 4); *see also* (Doc. 77 ¶ 54) ("She did not provide the District with any medical records, doctor's notes, length of time she would be off work or any additional information about her health status following her contact with Ashley Hyman on September 16th."). While Plaintiff claims that Defendant could have reasonably accommodated her by allowing her to use accrued paid sick leave and vacation time before terminating her employment or by allowing her more time to procure medical records, (Doc. 83 at 7), it is clear from the

---

employer and employee can come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee." *Snapp v. United Transportation Union*, 889 F.3d 1088, 1095 (9th Cir. 2018); *see also Hill v. City of Phoenix*, 162 F. Supp. 3d 918, 928 (D. Ariz. 2016).

record that Plaintiff never requested such accommodations.[25] "Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown in the interactive process," and Defendant bears no such responsibility for the breakdown here. *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996). Accordingly, Defendant is entitled to summary judgment as Plaintiff has provided no evidence sufficient to place Defendant on fair notice that she was seeking an accommodation.

Plaintiff's failure to meet her prima facie burden renders moot the remainder of the burden-shifting analysis. In any case, it is clear that Plaintiff cannot meet her burden of proving, by a preponderance of the evidence, that her disability actually played a role in Defendant's decision-making process and had a determinative influence on the outcome. *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004) (citing *Reeves*, 530 U.S. at 135).

In sum, the Court finds that Plaintiff has not introduced evidence sufficient to raise a genuine dispute of material fact that Defendant discriminated against her because of a disability. Accordingly, the Court grants Defendant's Motion with respect to Plaintiff's Fourth and Sixth Causes of Action alleging disability discrimination under the ADA and the Rehabilitation Act, respectively.

### C.      Retaliation under the ADA and the Rehabilitation Act

Defendant has moved for summary judgment on Plaintiff's Fifth Cause of Action alleging retaliation under the ADA, and on Plaintiff's Seventh Cause of Action alleging retaliation under the Rehabilitation Act. Plaintiff alleges that she was retaliated against in violation of the ADA and the Rehabilitation Act "because she was subjected to less favorable treatment than similarly situated coworkers after she notified her supervisor of

---

[25] Plaintiff's post-termination request for reasonable accommodations made in her Response to Defendant's Motion for Summary Judgment (Doc. 83) is "too little, too late." *See Alexander v. Northland Inn*, 321 F.3d 723, 728 (8th Cir. 2003) (recognizing that employee's post-termination request for a reasonable accommodation was "too little, too late" and affirming district court's grant of summary judgment where employee failed to meet her prima facie burden of showing that a reasonable accommodation was available that would not have placed an undue burden on the employer).

her disability and requested leave for medical treatment and to care for herself[.]" (Doc. 3 ¶ 43, 51). The Court will analyze Plaintiff's Fifth and Seventh Causes of Action in tandem.

The anti-retaliation provisions of the ADA state:

> (a)  No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
> (b)  It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203. Similarly, the Rehabilitation Act incorporates the anti-retaliation provision of Title VI of the Civil Rights Act of 1964[26] "so as to extend the Rehabilitation Act's protections to 'any individual' who has been intimidated, threatened, coerced, or discriminated against 'for the purpose of interfering with [protected rights]' under Title VI of the Civil Rights Act or the Rehabilitation Act." *Barker*, 584 F.3d at 825 (citations and internal quotations omitted).

### 1.    The Prima Facie Case

In order to establish a *prima facie* case of retaliation under the ADA and the Rehabilitation Act, the plaintiff must show: "(1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two." *Coons*, 383 F.3d at 887 (quoting *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003)). In other words, Plaintiff must establish a link between her alleged request for a reasonable accommodation and her termination. *See Coons*, 383 F.3d at 887. "Once the plaintiff establishes a *prima facie* case, the employer has the burden to 'present legitimate reasons

---

[26] *See* 29 U.S.C. § 794a(2) ("The remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 . . .  shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance . . . ."); *Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 825 (9th Cir. 2009); *see also* 34 C.F.R. § 100.7(e).

for the adverse employment action.'" *Id.* (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)). If the employer meets this burden, the plaintiff must then demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was pretext in order for the retaliation claim to proceed beyond summary judgment. *Id.*

In this case, it is clear that there was an adverse employment action, as Plaintiff's job position was eliminated. *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004) ("An adverse employment action is any action reasonably likely to deter employees from engaging in protected activity.") (citations and internal quotations omitted). Nevertheless, Plaintiff is unable to meet her prima facie burden of showing involvement in a protected activity. Under the ADA, requesting a reasonable accommodation for an alleged disability constitutes protected activity. *See Coons*, 383 F.3d at 887. Plaintiff contends that she requested such a reasonable accommodation by requesting medical leave, (Doc. 77 ¶ 54), and cites to case law for the proposition that requesting medical leave may constitute protected activity for purposes of establishing a prima facie case of retaliation, (Doc. 83 at 6) (citing *Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007); *Villalon v. Del Mar College Dist.*, 2010 U.S. Dist. LEXIS 82766, *9-10 (S.D. Tex. Aug. 13, 2010)).

It is true that "[r]requesting medical leave *can* be considered a reasonable accommodation for purposes of the ADA, and requesting a reasonable accommodation is protected activity." *Valenzuela v. Bill Alexander Ford Lincoln Mercury Inc.*, No. CV-15-00665-PHX-DLR, 2017 WL 1326130, at *4 (D. Ariz. Apr. 11, 2017) (emphasis added). However, the cases cited by Plaintiff are distinguishable from the present case for the major reason that Plaintiff's sick leave, taken day-by-day, is not at all equivalent to the "medical leave" requested in those cases as reasonable accommodations.[27] As noted

---

[27] For example, in *Bryson v. Regis Corp.*, the "protected activity" element of the plaintiff's prima facie case for retaliation under the ADA was satisfied because the plaintiff "engaged in statutorily protected activity by taking FMLA-approved leave to undergo and recover from knee surgery." *Bryson*, 498 F.3d at 570–71. The plaintiff had requested FMLA medical leave for this surgery ten days in advance, had kept her supervisor advised about her knee condition prior to the request for leave, and her FMLA

*supra*, Plaintiff never requested a reasonable accommodation. Nor does Plaintiff allege that she engaged in any other protected activity or pursued her rights under the ADA in another way. *See Pardi*, 389 F.3d at 850 ("Pursuing one's rights under the ADA constitutes a protected activity."). Therefore, Plaintiff did not engage in protected activity under the ADA. Accordingly, the Court grants summary judgment for Defendant on Plaintiff's Fifth and Seventh Causes of Action alleging retaliation under the ADA and the Rehabilitation Act, respectively.

### D.     Retaliation under the FMLA

Defendant has moved for summary judgment on Plaintiff's Ninth Cause of Action alleging retaliation under the FMLA. Under the FMLA, retaliation claims arise under 29 U.S.C. § 2615(a)(2) and § 2615(b). A retaliation claim under the FMLA is properly brought under 29 U.S.C. § 2615(a)(2) when an employer discharges or discriminates against any individual for opposing any practice made unlawful by the FMLA. *Bachelder*, 259 F.3d at 1124. In the alternative, if an employee is subjected to an adverse employment action or discriminated against for instituting or participating in FMLA proceedings, a retaliation claim may be brought under 29 U.S.C. § 2615(b). *Id.*

Plaintiff alleges that she was "retaliated against in violation of the FMLA because she was subjected to less favorable treatment than similarly situated coworkers after she requested leave for medical treatment and to care for herself[.]" (Doc. 3 ¶ 66). Nevertheless, "[b]y their plain meaning, the anti-retaliation or anti-discrimination provisions do not cover visiting negative consequences on an employee simply because he has used FMLA leave." *Id.* Rather, when an employee is discharged or discriminated against for taking FMLA leave, "the claim is analyzed in the Ninth Circuit as a claim for

---

leave was formally approved by her employer. *Id.* at 565-66. Similarly, in *Villalon v. Del Mar College Dist.*, the District Court determined that the plaintiff's request and use of FMLA leave constituted a reasonable accommodation under the ADA. *Villalon*, 2010 WL 3221789, at *7. In each of these cases, the "medical leave" referred to was FMLA leave which the plaintiffs had requested use of from their employers in advance. Plaintiff's day-by-day requests for sick leave here are not what these courts (nor this Court) would consider requests for "medical leave." *See also Valenzuela*, 2017 WL 1326130, at *4.

'interference' under 29 U.S.C. § 2615(a)(1)." *Id.*; *see also Gressett v. Cent. Arizona Water Conservation Dist.*, No. CV-12-00185-PHX-JAT, 2014 WL 4053404, at *9 (D. Ariz. Aug. 14, 2014) ("[T]he act of retaliation for taking FMLA leave is properly categorized as interference under the FMLA.") (citations omitted).

In the present case, Plaintiff's Amended Complaint alleges, in essence, that Defendant terminated Plaintiff because Plaintiff exercised her rights to FMLA leave. (Doc. 3 ¶ 66).[28] Plaintiff does not allege that Defendant discriminated against her because she opposed Defendant's unlawful violations of the FMLA, nor does Plaintiff argue that she was fired for opposing Defendant's alleged violations of the FMLA. (Doc. 3; Doc. 83). The Court has found no allegations in Plaintiff's Amended Complaint which support a retaliation claim under the FMLA. Accordingly, because Plaintiff has alleged that she suffered a negative employment decision after taking FMLA leave, the Court construes Plaintiff's "retaliation" claim as a claim for interference with FMLA rights, in violation of § 2615(a)(1). Therefore, to the extent the parties make arguments concerning a retaliation claim, the Court will consider them applicable to the interference claim and will analyze them accordingly.

### E.     Interference under the FMLA

Plaintiff and Defendant have each moved for summary judgment on Plaintiff's Eighth Cause of Action, which alleges interference with Plaintiff's rights under the FMLA. (Doc. 67 at 16-17; Doc. 70 at 1). The FMLA entitles an "eligible employee"[29] who is unable to perform his or her job functions due to a "serious health condition" to 12 workweeks of leave during any 12-month period. 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves . . . inpatient care in a hospital, hospice, or residential medical care facility," or

---

[28] Plaintiff also alleged that she was retaliated and discriminated against for taking FMLA leave in her cause of action for FMLA interference. (Doc. 3 ¶¶ 61-62).

[29] An "eligible employee" is an employee who has been employed for at least 12 months by the employer with respect to whom leave is requested and for at least 1,250 hours of service with such employer during the previous 12-month period. 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a)(1), (2).

involves "continuing treatment by a health care provider." 29 U.S.C. § 2611(11). An employee who takes leave under § 2612 is protected under the FMLA and entitled to be restored to her position or an equivalent position upon her return. 29 U.S.C. § 2614(a).

FMLA interference claims are derived from 29 U.S.C. § 2615(a)(1), which prohibits employers from interfering with the exercise or attempted exercise of an employee's right to take leave pursuant to 29 U.S.C. § 2612(a). *See* 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."). Therefore, "employers cannot use the taking of FMLA leave as a negative factor in employment actions." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001) (alteration and emphasis omitted) (quoting 29 C.F.R. § 825.220(c)). To assert an FMLA-based claim regarding a negative employment decision, an employee must show that the taking of FMLA-protected leave was used against the employee in an employment decision. *Id.* This can be accomplished through direct or circumstantial evidence, or both. *Id.* As such, an FMLA interference claim does not proceed under the *McDonnell Douglas* burden-shifting framework but, rather, will survive summary judgment if there is a triable issue of material fact as to whether the employee's FMLA leave request was impermissibly considered as a factor in her termination. *Xin Liu. V. Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003).

Moreover, the "failure to notify an employee of her rights under the FMLA can constitute interference if it affects the employee's rights under [the] FMLA." *Liston v. Nevada ex rel. its Dep't of Bus. & Indus.*, 311 F. App'x 1000, 1002 (9th Cir. 2009) (citations omitted). "However, the FMLA 'provides no relief unless the employee has been prejudiced by the violation.'" *Id.* (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)).

Plaintiff alleges that Defendant "failed to provide her with notice of her rights under the FMLA," "violated and interfered with Plaintiff's rights under the FMLA by retaliating against her after she requested medical leave," and subjected her "to less

- 43 -

favorable treatment than similarly situated coworkers because she requested leave for medical treatment and to care for herself[.]" (Doc. 3 ¶¶ 60-62). As each of these claims alleging interference is premised on Plaintiff first providing Defendant "with adequate, timely, and sufficient notice under the circumstances of her need for leave under the FMLA," (Doc. 3 ¶ 58), the Court examines the sufficiency of such notice here.

Defendant argues that Plaintiff's claims for FMLA interference fail because Plaintiff did not "provide Defendant with anything even approaching 'sufficient' notice of her intent to take FMLA leave." (Doc. 67 at 16). In support of this contention, Defendant points to the fact that Plaintiff never submitted or requested FMLA paperwork from Defendant. (Doc. 67 at 16). According to Defendant, Plaintiff "never attempted to take FMLA [leave]], nor gave any indication of her intention to take FMLA leave." (Doc. 67 at 16). Instead, Plaintiff "merely called in daily" to use sick leave, and "did not provide any factual information or documentation about the nature of her illness or indicate she would be out longer than one day." (Doc. 67 at 17). Furthermore, Plaintiff never provided Defendant "with any doctor's note or other medical information that explained her absences or her medical condition." (Doc. 67 at 17).

On the other hand, Plaintiff claims that she satisfied the FMLA notice requirement "when she notified the District of her serious medical condition on September 16, 2014 and requested sick leave." (Doc. 83 at 10). Plaintiff asserts that her supervisors and managers "had sufficient information to trigger Defendant's obligation to notify her of her FMLA rights, and/or at the very least conduct further inquiry regarding whether the FMLA would apply." (Doc. 70 at 7).

It is clear that Plaintiff never formally requested FMLA leave. (Doc. 70 at 9). While Plaintiff contends that the District had knowledge of her specific medical condition because Plaintiff allegedly told Ms. Hyman about her brain tumor, (Doc. 68-2 at 10-11, Marquez Depo., 110:22-111:15), Defendant denies that Ms. Hyman was told Plaintiff had a brain tumor until after Plaintiff no longer worked at the District, (Doc. 68-2 at 77-78, Hyman Depo., 43:23-44:9). Since the parties agree that Plaintiff never told any other

District employees that she was seeing a doctor for a brain tumor, (Doc. 77 ¶ 52; Doc. 68-2 at 10, Marquez Depo., 110:2-21), nor provided any other information about her condition other than mentioning when she would next be going to the doctor, (Doc. 68 ¶ 51; Doc. 77 ¶ 51; Doc. 69 ¶ 17; Doc.75 ¶ 17), the issue of sufficient notice comes down to whether or not Plaintiff did, in fact, tell Ms. Hyman that she had a brain tumor.[30] Thus, at issue is whether a reasonable juror could conclude that the information Plaintiff gave to the District was sufficient to reasonably apprise Defendant of her request to take time off for a serious health condition.

Employees must notify their employers in advance when they plan to take foreseeable leave for reasons covered by the FMLA, *see* 29 U.S.C. § 2612(e), and as soon as practicable when absences are not foreseeable. *See* 29 C.F.R. § 825.303(a). As to whether or not an employee has provided sufficient notice, "the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1209 (S.D. Cal. 1998). Calling in sick is, by itself, insufficient to put an employer on notice of the employee's need for FMLA leave. *See* 29 C.F.R. § 825.303(b). However, an employee need only notify her employer that he or she

---

[30] In her Reply (Doc. 85), Plaintiff states that "Ms. Hyman did not deny that Plaintiff told her she had a brain tumor" in an attempt to characterize this alleged communication to Ms. Hyman as an "undisputed fact." (Doc. 85 at 2). However, a cursory look at Ms. Hyman's deposition establishes that Plaintiff's stated summary of Ms. Hyman's testimony is incorrect. Rather, Ms. Hyman's deposition testimony demonstrates that Ms. Hyman claims she had no idea Plaintiff had a brain tumor until after Plaintiff no longer worked at the District:

> Q: So it's your testimony today that you had no idea that she had a brain tumor?
> A: I did not. I learned . . . of that after the fact.
> Q: After what fact? After her termination?
> A: After she no longer worked at our district.
> Q: And that's the first time that you learned of her medical condition?
> A: Uh-huh, yes. Obviously, her e-mails were requesting sick leave. And they, to my recollection, just said: I need to take a sick day.

(Doc. 69-1 at 42, Hyman Depo., 43: 23-44:9).

"will be absent under circumstances which indicate the FMLA might apply." *Bachelder*, 259 F.3d at 1130. For example, the "employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed [for a qualifying reason]." 29 C.F.R. § 825.302(c). Therefore, an "employee's suggestion that absences are necessary for a protected reason (for example, by mentioning a health condition) is sufficient to trigger FMLA protection." *Ormsby v. Sunbelt Rentals, Inc.*, 205 F. Supp. 3d 1204, 1213 (D. Or. 2016) (citing *Bachelder*, 259 F.3d at 1130-31).

Further, "it is the employer's responsibility, not the employee's, to determine whether a leave request is likely to be covered by the Act." *Bachelder*, 259 F.3d at 1130; *see also Xin Liu*, 347 F.3d at 1134 ("It is the employer's responsibility to determine when FMLA leave is appropriate, to inquire as to specific facts to make that determination, and to inform the employee of his or her entitlements."). "The employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(c). To do so, the employer may require that the employee obtain, in a timely manner, a written certification by a health care provider regarding the medical condition necessitating leave. 29 U.S.C. § 2613(a).

On the one hand, if Plaintiff did not tell Ms. Hyman that she had a brain tumor, then Plaintiff likely did not provide sufficient notice to Defendant of her intent to take leave by merely requesting sick leave day-by-day. When an employee requests leave under the FMLA, the employer must be made aware that the absence is due to a serious illness so that the employer can distinguish it from ordinary sick-days. *See Dalton v. ManorCare of W. Des Moines IA, LLC*, 782 F.3d 955, 960 (8th Cir. 2015). Without any further information about her medical condition, Defendant would have no obligation to inquire further into whether or not Plaintiff's sick time might qualify for leave as Plaintiff did not formally request leave under the FMLA, nor provide Defendant with any other indication that she was suffering from a serious health condition. *See Phinizy v. Pharmacare*, 569 F. Supp. 2d 512, 515 (W.D. Pa. 2008) ("Case law is uniform in

recognizing that an interference claim cannot proceed where the notice provided for any particular absence is 'patently insufficient' to inform the employer that it was the result of a medical condition that might qualify for leave.").

For example, in *Swoope v. County of Summit*, the employee left voicemails with his employer daily to call off work, did not specifically request leave pursuant to the FMLA, and did not provide evidence indicating that he had told his supervisors about his medical condition in any of those voicemails or in other conversations. *Swoope v. Cty. of Summit*, 2002-Ohio-2210, 2002 WL 987835, at *6 (Ohio Ct. App. May 8, 2002). As a result, the Court determined that the employee failed to show that he gave his employer sufficient notice that he was requesting leave for a qualifying condition under the FMLA. *Id.* Similarly, in *Satterfield v. Wal-Mart Stores, Inc.*, the employee's mother notified the employer that the employee was "sick," and delivered a note to the employer from the employee stating that the employee "was having a lot of pain in her side" and would be unable to work that day. *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir. 1998). The Court concluded that no rational trier of fact could conclude that this was sufficient to reasonably apprise the employer of the employee's request to take time off for a serious health condition. *Id.* In the same vein, if Plaintiff merely notifed Ms. Hyman that she was sick and unable to work, then the information Plaintiff gave to Defendant was insufficient to notify Defendant of her intent to take leave due to her brain tumor.

On the other hand, if Plaintiff did, in fact, tell Ms. Hyman that she had a brain tumor, then Plaintiff likely did provide sufficient notice to Defendant of her intent to take time off for a serious health condition. For example, in *Miller v. GB Sales & Serv., Inc.*, the Court determined that the employee provided sufficient notice under the FMLA to survive summary judgment when she explicitly informed her supervisor that she was diabetic and suffered from depression, and informed her supervisor that her absences were medically related. *Miller v. GB Sales & Serv., Inc.*, 275 F. Supp. 2d 823, 830 (E.D. Mich. 2003). Accordingly, the employer's knowledge of the employee's "serious health conditions placed the burden on it to inquire further whenever [the employee] called in

sick for medical reasons to determine if those reasons were FMLA-qualifying." *Id.* at 829-30.

Here, the parties have produced sufficient competing evidence establishing a genuine dispute of material fact as to whether or not Plaintiff told Ms. Hyman of her brain tumor prior to the termination of her employment. This, in turn, creates a genuine dispute of material fact as to whether the information Plaintiff allegedly gave to Defendant was sufficient to reasonably apprise the District of her request to take time off for a serious health condition.

Accordingly, the Court finds that there is a triable issue of material fact as to whether the employee's FMLA leave request was impermissibly considered as a factor in her termination. *Xin Liu.*, 347 F.3d at 1136. For this reason, both Defendant and Plaintiff's Motions for Summary Judgment on Plaintiff's FMLA interference claims are denied.

### F. Defendant's Mitigation of Damages Defense

In her Motion for Partial Summary Judgment, Plaintiff claims she is entitled to summary judgment on Defendant's affirmative defense of failure to mitigate damages. (Doc. 70 at 9). A discharged employee has a duty to mitigate damages by seeking other suitable employment through the exercise of reasonable diligence. *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231-32 (1982); *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1345 (9th Cir. 1987). However, a claimant "need not go into another line of work, accept a demotion, or take a demeaning position" in order to demonstrate adequate mitigation efforts. *Ford Motor Co.*, 458 U.S. at 231-32.

"The defendant bears the burden of showing failure to mitigate[.]" *Jackson v. Shell Oil Co.*, 702 F.2d 197, 202 (9th Cir. 1983). In order to establish a failure to mitigate damages defense, a defendant must prove that: (1) there were substantially equivalent jobs available at the time which the plaintiff could have obtained, and (2) that the plaintiff failed to use reasonable diligence in seeking such a job. *Odima*, 53 F.3d at 1497 (citing *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 906 (9th Cir. 1994)). "Substantially

equivalent employment is that which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the [] claimant has been discriminatorily terminated." *Cassella v. Mineral Park, Inc.*, No. CV-08-01196-PHX-MHM, 2010 WL 454992, at *5 (D. Ariz. Feb. 9, 2010) (internal quotations omitted) (citation omitted).

Notably, Plaintiff does not argue in her Motion for Partial Summary Judgment that Defendant is unable to demonstrate the second prong of its failure to mitigate defense, namely, that Plaintiff failed to use reasonable diligence in seeking another job. *See* (Doc. 70 at 9-11). In fact, with the exception of generally describing the burden Defendant must meet to establish this defense, Plaintiff does not address the "reasonable diligence" aspect of the mitigation of damages defense at all in her Motion. *Id.* To the extent Plaintiff mentions the reasonable diligence prong in her Reply, she does so only in an attempt to distinguish the present case from *Cheeks v. General Dynamics*, 22 F. Supp. 3d 1015 (D. Ariz. 2014), a case Defendant cites in support of its argument against Plaintiff's motion for summary judgment on this claim, (Doc. 80-1 at 9). (Doc. 85 at 9-10). Specifically, in her Reply Plaintiff claims *Cheeks* is distinguishable because Plaintiff has presented arguments on both prongs of Defendant's affirmative damages defense, whereas the plaintiff in *Cheeks* failed to contend in its motion for summary judgment that there was no genuine dispute of material fact regarding the employee's failure to use reasonable diligence. (Doc. 85 at 9 (citing *Cheeks*, 22 F. Supp. 3d at 1026-27)). However, despite this contention in her Reply, Plaintiff has not presented *any* argument nor pointed to any evidence in the record indicating that there is no genuine dispute of material fact regarding Plaintiff's failure to use reasonable diligence.[31] Accordingly, the Court will

---

[31] In contrast, Defendant pointed to evidence in the record from which a reasonable juror could conclude that Plaintiff failed to use reasonable diligence in seeking a job. For example, Defendant indicated that Plaintiff failed to follow up with a potential employer, Greenway High School, who contacted Plaintiff to schedule an interview. (Doc. 75 ¶¶ 51-53). Further, despite Plaintiff's response to Interrogatory No. 4 of Defendant's First Set of Interrogatories in which she listed 19 employers with whom she claims she sought employment following her termination, Defendant's vocational expert found that six of these employers "documented that, as of July 2017, Ms. Marquez had not applied." (Doc. 75-1 at 36; Doc. 75 ¶¶ 49-50). Defendant's vocational expert also stated in his Earning Capacity Evaluation that although it appears that Plaintiff did apply for a position with

consider it undisputed for purposes of this motion that Defendant can meet its burden of showing that there is a genuine dispute of fact as to whether Plaintiff failed to use reasonable diligence in seeking other employment.[32]

However, Plaintiff does challenge Defendant's ability to prove that substantially equivalent jobs were available to Plaintiff. Defendant produced an Earning Capacity Evaluation completed by a vocational expert which sets out a list of seven jobs for which the vocational expert believed Plaintiff to be qualified. (Doc. 75-1 at 38-39). This Earning Capacity Evaluation lists the job title, the employer's name, the job search website on which the job listing was found, salary (if noted), and indicates that each of the available positions were available in the Phoenix, Arizona area. (Doc. 75-1 at 38-39). The vocational expert noted that the list provided was "but a small sample of available jobs with essential functions comparable to those in Ms. Marquez' job at Glendale Union High School District[.]" (Doc. 75-1 at 39). Further, the expert opined that Plaintiff "could expect to earn annual wages ranging from $69,950–104,416 in 2017 dollars," which is "comparable" to those wages she earned at the District. (Doc. 75-1 at 39).

Despite this showing by Defendant, Plaintiff contends that summary judgment is appropriate on Defendant's affirmative defense because Defendant "has failed to produce evidence to support the availability of comparable employment." (Doc. 70 at 10). Specifically, Plaintiff claims that in his Earning Capacity Evaluation of Plaintiff, Defendant's vocational expert did not provide any information on prospective

---

the Tolleson Union High School District in November 2014, there is "no evidence that she ever followed-up on her application" by completing the required pre-employment proficiency test. (Doc. 75-1 at 36-37; Doc. 75 ¶¶ 49-50).

[32] On a motion for summary judgment, the movant bears the initial burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. "A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the . . . presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). Should a party fail to "properly support an assertion of fact or fail[] to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion," or "issue any other appropriate order." Fed. R. Civ. P. 56(e).

employment opportunities other than names of employers and generic job titles. (Doc. 70 at 10). Plaintiff also argues that Defendant's vocational expert "simply makes a conclusory statement that the jobs listed in the report had 'essential functions' comparable to those Plaintiff had during her employment with Defendant" rather than include specific "information regarding the duties and responsibilities" for those prospective positions he identified. (Doc. 70 at 10). Plaintiff asserts that Defendant's showing on this "substantially equivalent" prong of its affirmative defense is mere unsupported conjecture insufficient to defeat summary judgment, (Doc. 70 at 10-11 (citing *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008)); *see Surrell*, 518 F.3d at 1103 ("Conclusory statements without factual support are insufficient to defeat a motion for summary judgment.").

Nevertheless, Defendant here has proffered evidence of substantially equivalent employment analogous to the showing made by the employer in *Cheeks v. General Dynamics*, which the Court found sufficient to defeat the employee's motion for summary judgment on the employer's failure to mitigate affirmative defense. *See Cheeks*, 22 F. Supp. 3d at 1026-28.[33] In *Cheeks*, the plaintiff employee contended that the defendant employer had failed to produce evidence demonstrating the availability of substantially equivalent open job positions, but, like Plaintiff here, did not contest the employer's ability to demonstrate the second, reasonable diligence prong of its failure to mitigate defense. *Id.*; *see* (Doc. 70 at 9-11). To satisfy its summary judgment burden on the "substantially equivalent" employment prong of its affirmative defense, the employer in *Cheeks* proffered approximately 100 job search results consisting only of job titles, employers, and locations, and did not offer any analysis as to how these prospective employment opportunities compared to the position the employee had previously held.

---

[33] In November 2014, the District Court clarified its order in *Cheeks v. Gen. Dynamics*, 22 F. Supp. 3d 1015, (D. Ariz. 2014), as to the plaintiff employee's FMLA interference claim in *Cheeks v. Gen. Dynamics*, No. CV-12-01543-PHX-JAT, 2014 WL 11514328 (D. Ariz. Nov. 18, 2014). However, the District Court's November 18, 2014 Order of Clarification did not address its denial of the employee's motion for summary judgment on the defendant employer's mitigation of damages defense.

*Id.* at 1027. However, the Court determined that the employer's "failure to proffer detailed descriptions of the jobs [was] not fatal" because the employer, as the non-movant, merely needed to establish a genuine dispute of material fact to survive summary judgment. *Id.* at 1027-28. Based on the fact that "the vast majority of the positions were, based on job titles, potentially equivalent to [the] [p]laintiff's previous position" and on the number of jobs produced, the Court found it reasonable to infer that at least one of the positions might be substantially equivalent to the employee's prior job. *Id.* at 1027-28. As a result, the Court found that the employer met its summary judgment burden and denied the employee's summary judgment motion as to the employer's failure to mitigate affirmative defense. *Id.* at 1028.

Here, Defendant's evidence of substantially equivalent employment is sufficient to defeat Plaintiff's motion for summary judgment on Defendant's failure to mitigate affirmative defense. Like the employer in *Cheeks*, Defendant has produced a list of job opportunities which includes names of employers, location, salary (if available), and which, based on job titles alone, the Court finds it reasonable to infer that the positions are substantially equivalent to Plaintiff's former position with the District. *See* (Doc. 75-1 at 38-39 (listing job openings such as "SQL Developer," and "SQL Database Administrator"); Doc. 77-1 at 95-103 (District job descriptions for computer programmer)). Further, Defendant has also provided the analysis of a vocational expert who—after examining an extensive record which included Plaintiff's personnel file, resume, and job descriptions of her former position— determined that the sampling of available employment had "essential functions" comparable to Plaintiff's prior job at the District. (Doc. 75 ¶ 30; Doc. 75-1 at 4-5, 38-39). As Defendant's vocational expert report contains factual support, the Court does not agree with Plaintiff's contention that Defendant's Expert has only made a "conclusory statement" insufficient to defeat its motion for summary judgment. (Doc. 70 at 10-11). Rather, Defendant has met its summary judgment burden on both elements of its failure to mitigate affirmative defense. Accordingly, the Court denies Plaintiff's motion for partial summary judgment with

respect to Defendant's failure to mitigate affirmative defense.

**V.    CONCLUSION**

For the reasons set forth above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 67) is **GRANTED IN PART** as to Plaintiff's Fourth Cause of Action alleging disability discrimination under the ADA, as to Plaintiff's Fifth Cause of Action alleging retaliation under the ADA, as to Plaintiff's Sixth Cause of Action alleging disability discrimination under the Rehabilitation Act, and as to Plaintiff's Seventh Cause of Action alleging retaliation under the Rehabilitation Act.[34] Defendant's Motion for Summary Judgment is **DENIED IN PART** as to Plaintiff's Third Cause of Action alleging age discrimination under the ADEA, and as to Plaintiff's Eighth Cause of Action alleging FMLA interference.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 70) is **DENIED**.

The Clerk of the Court shall not enter judgment at this time.

Dated this 9th day of October, 2018.

James A. Teilborg
Senior United States District Judge

---

[34] To the extent the Court has construed Plaintiff's Ninth Cause of Action alleging retaliation under the FMLA as an FMLA interference claim, the Court grants summary judgment for Defendant on any theory of FMLA retaliation because Plaintiff failed to properly plead an FMLA retaliation claim.